No. ___
FILED
APR 14 1994
William F Clayton
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| FLANDREAU SANTEE SIOUX TRIBE,              )<br>                                           )<br>            Plaintiff,                    )<br>                                           )<br>v.                                         )<br>                                           )<br>STATE OF SOUTH DAKOTA; WALTER              )<br>D. MILLER, Governor of the                 )<br>State of South Dakota; and                 )<br>RONALD J. SCHREINER, Secretary             )<br>of Revenue of the State of                 )<br>South Dakota,                              )<br>                                           )<br>            Defendants.                   )<br>                                           ) | CIVIL NO. CIV94-4086<br><br>COMPLAINT FOR DECLARATORY<br>RELIEF |

## INTRODUCTION

1. This action seeks a declaratory judgment that, under federal law, the State of South Dakota does not have jurisdiction to impose or is preempted from imposing either its (1) sales tax on sales by the Plaintiff Tribe of tangible personal property to non-members of the Plaintiff Tribe when the sales occur on lands held in trust for the Tribe by the United States, or (2) use tax attributable to the purchase, by non-members, of tangible personal property from the Plaintiff Tribe when the purchases occur on lands held in trust for the Tribe by the United States, or (3) sales and use taxes on the labor and materials used by prime and sub-contractors in realty improvements made by the Plaintiff Tribe, for either commercial or non-commercial purposes, on lands held in trust for the Tribe by the United States, or (4) contractors' excise tax on the gross receipts of a prime contractors' excise tax

on the gross receipts of a prime contractor employed by the Plaintiff Tribe to make realty improvements, for either commercial or non-commercial purposes, on lands held in trust for the Tribe by the United States.

2. Plaintiff also seeks a declaratory judgment that, under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et. seq., the State of South Dakota may not limit (or refuse to negotiate beyond a certain limit) the number of slot machines or video lottery machines that the Plaintiff Tribe may operate under a Gaming Compact based on a purported State public policy that gaming should be limited or based on other reasons, including reasons grounded on State laws or regulations.

## JURISDICTION

3. The jurisdiction of this Court is based on 28 U.S.C. §§ 1331 and 1362. As a source of authority for the remedies requested, Plaintiff relies in addition on 28 U.S.C. §§ 2201 and 2202.

## PARTIES

4. The Plaintiff is an Indian tribe recognized by the Secretary of the Interior. The Plaintiff has been the subject of attempts by the Defendants to impose State of South Dakota sales, use and contractors' excise taxes on activities occurring on lands held in trust by the United States for the Plaintiff Tribe. The Plaintiff was also informed by the State that its liquor license would not be transferred for the year

beginning January 1, 1994 unless it agreed to pay State sales and use taxes with respect to sales to or purchases by non-members of Plaintiff Tribe of tangible personal property at the Royal River Casino. Plaintiff has also been limited by the State of South Dakota in the number of slot machines and video lottery machines it may operate under its Gaming Compact with the State.

5. The State of South Dakota seeks to impose its sales, use and contractors' excise taxes on activities occurring on lands held in trust by the United States for the Plaintiff Tribe. The State of South Dakota, in its Compact negotiations with the Plaintiff Tribe, also has limited (or refused to negotiate beyond a certain limit) the number of slot machines and video lottery machines that the Plaintiff Tribe may operate.

6. Walter D. Miller is the Governor of the State of South Dakota. The Governor is the principal agent of the State of South Dakota in administering and carrying out the tax laws and policies of the State. The Governor is also responsible for establishing the policies of the State with respect to Gaming Compacts with tribes and for approving such Compacts and their provisions. The Governor is sued in his official capacity.

7. Ronald J. Schreiner is the Secretary of Revenue of the State of South Dakota. In this capacity he has the responsibility to administer the Department of Revenue and

carry out and enforce the tax laws of the State, including the sales, use and contractors' excise taxes and certain laws of the State pertaining to the issuance and renewal of liquor licenses. Secretary Schreiner has notified the Tribe that it must collect, and remit to the State, sales and use taxes on sales to or purchases by non-members of Plaintiff Tribe of tangible personal property at the Royal River Casino. Secretary Schreiner has also notified the Tribe that unless such taxes are collected and remitted, he will deny the transfer of the Tribe's liquor license. Secretary Schreiner will also impose the State sales, use and contractors' excise taxes on realty improvements made by the Tribe on lands held in trust by the United States for the Plaintiff Tribe. The Secretary is sued in his official capacity.

## FACTS

8. The Plaintiff Tribe adopted Ordinance No. 89-03 on February 11, 1989 to regulate the sale and use of intoxicating beverages within the jurisdiction of said Tribe. The Ordinance, was amended on October 17, 1991 and was approved by the Secretary of the Interior on or about March 17, 1993 and published in the Federal Register on Thursday, March 25, 1993, 58 Fed. Reg., 16330 et. seq. The Ordinance was enacted pursuant to 18 U.S.C. § 1161 and is codified as Ordinance No. 89-03 of the Tribal Code.

9. During 1990, the Plaintiff Tribe entered into a Lease

4

Agreement with the Royal Hunter Corporation, a South Dakota corporation to manage the Royal River Casino. Upon application, the State Department of Revenue issued to Plaintiff Tribe a retail on-sale liquor license, a retail on-sale beer license and a retail on-sale wine license. On information and belief, the Royal Hunter Corporation remitted sales taxes to the Revenue Department for sales on food, beverage and other tangible personal property from operation of the Royal River Casino.

10. In March 1991, the Lease Agreement between the Royal Hunter Corporation and the Plaintiff Tribe ceased.

11. In March 1991, the Plaintiff Tribe signed a Management Contract with Rita, Inc., a South Dakota corporation, to manage the Royal River Casino, including the bar and restaurant and further agreed to transfer any and all alcoholic beverage licenses to Rita, Inc.

12. That prior to July 1991, Rita, Inc., was notified by the State Department of Revenue that it was required to remit State sales taxes on the sales of food, beverages and and other tangible personal property in the Royal River Casino. Rita, Inc. was instructed to remit appropriate sales taxes or face the suspension or revocation of its liquor license at the Royal River Casino.

13. That in July 1991, Rita, Inc. began remitting State sales taxes "under protest" on the total sales of food, beverages and other tangible personal property to the Department of Revenue. Sales taxes were remitted until December 1, 1993,

the date that Rita, Inc. ceased management of the Royal River Casino. Sales taxes paid under protest totalled $40,974.06 for 1991; $62,648.20 for 1992; and $56,366.89 for 1993.

14. In November 1993, Plaintiff Tribe and Rita, Inc. began and completed the process to transfer the on-sale liquor, wine and beer licenses from Rita, Inc. to the Plaintiff Tribe for the Royal River Casino. The licenses were to expire on December 31, 1993.

15. In December 1993, shortly before the liquor licenses of Rita, Inc. were to expire, the Plaintiff Tribe scheduled a meeting with the Department of Revenue to discuss the transfer of the liquor, wine and beer licenses from Rita, Inc. to the Plaintiff Tribe. The Department of Revenue stated that it would transfer the requisite licenses on the following conditions: That the Plaintiff Tribe remit to the Department of Revenue approximately $30,248.12 in previously accrued motor vehicle fuel excise taxes the State felt it was due for sales of gasoline and diesel fuel by Plaintiff Tribe's First American Mart during 1991; that the Plaintiff Tribe apply for a sales or use tax license for the Royal River Casino; and that the Plaintiff Tribe remit State sales taxes on the sales of food, beverages and other tangible personal property to all non-members beginning January 1994.

16. That during this scheduled meeting the Plaintiff Tribe, under protest, agreed to remit the accrued motor fuel taxes; agreed, under protest, to apply for a sales tax license

6

for the Royal River Casino; and agreed, under protest, to escrow taxes in the amount of four percent (4%) on the total sales of food, beverages and other tangible personal property at the Royal River Casino until this lawsuit becomes final.

17. That the Plaintiff Tribe has paid the accrued sales tax on motor vehicle fuel and has applied for and received a sales tax license for the Royal River Casino, number 52-002251; and has entered into an Escrow Agreement with the Department of Revenue, whereby a four percent (4%) tax is assessed and escrowed with the Farmers State Bank, Flandreau, South Dakota, on sales for food, beverages and other tangible personal property at the Royal River Casino.

18. The Plaintiff Tribe, pursuant to its Constitution, adopted Ordinance number 94-01 the Retail Business, Tangible Personal Property Sales Tax Act, which amended a previous Sales Tax Ordinance and is currently collecting a 1% sales tax, in addition to the above noted Escrow Agreement on the sales of food, beverages and other tangible personal property.

19. The Plaintiff Tribe, pursuant to its State licenses, has sold beer, wine and liquor to both members of the Tribe and non-members for consumption only on the premises of the Royal River Casino. The patrons of the Casino who purchase these alcoholic beverages come to the Casino primarily to gamble, not to drink alcoholic beverages.

20. The Plaintiff Tribe also sells food, non-alcoholic

beverages, cigarettes, gift shop items and other tangible personal property to both members of the Tribe and non-members who are patrons of the Royal River Casino. The food and non-alcoholic beverages are sold for consumption on the premises of the Casino. The patrons of the Casino who purchase food, non-alcoholic beverages, cigarettes, gift shop items and other tangible personal property come to the Casino primarily to gamble, not to purchase such tangible personal property.

21. S.D.C.L. § 10-46A-1 imposes a two percent realty improvement contractors' excise tax upon the gross receipts of all prime contractors engaged in realty improvement. S.D.C.L. § 10-46A-3 makes this tax applicable to the total contract price, that is, to all labor and to all materials, whether purchased by the contractor or by the person or entity letting the contract.

22. On information and belief, the Department of Revenue of the State of South Dakota does not impose the contractors' excise tax on realty improvements made by tribes on tribal lands for governmental purposes.

23. The Department of Revenue of the State of South Dakota does impose the contractors' excise tax on realty improvements made by tribes on tribal lands for commercial purposes.

24. That in January 1994, the Plaintiff Tribe signed a contract with Tsa La Gi, an architectural firm, of Bismarck, North Dakota, to design and oversee the construction of a

new casino on trust land within the boundaries of the Plaintiff Tribe's reservation, which facility will be wholly owned and operated by the Plaintiff Tribe. The architectural firm is currently designing all plans necessary to construct a new gaming facility.

25. On information and belief, the Defendant State will impose and attempt to collect its sales, use and contractors' excise taxes from prime and sub-contractors in connection with this anticipated realty improvement project of the Plaintiff Tribe occurring on lands held in trust by the United States for the Tribe, for the general purpose of increasing revenues.

26. The Plaintiff Tribe and the State of South Dakota entered into a Gaming Compact pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et. seq. on June 29, 1990. The Secretary of the Interior's approval of the Compact was published in the Federal Register on August 2, 1990, 55 F.R. 31446. The Compact authorizes the Plaintiff to operate a maximum of 250 slot machines. Under the Compact, Plaintiff has located these machines at the Royal River Casino located at Flandreau, South Dakota.

27. In June 1990, the State of South Dakota proposed to the Plaintiff Tribe to enter into a second Compact for the operation of thirty (30) video lottery machines. Under the Compact the Plaintiff would operate these machines within the exterior boundaries of the reservation. The Plaintiff

Tribe declined to enter into the Agreement because of the limitation on the numbers of machines allowed by the State.

28. Throughout the Compact negotiations, the Tribe sought to eliminate the 250 slot machine insisted upon by Defendants. Based on the assertion that South Dakota public policy only authorizes limited gaming and more than 250 slot machines would violate this public policy, the Defendants would not agree to eliminate the slot machine limit or even to permit a higher limit. Based on the assertion that to do so would violate South Dakota law, regulations and policy, the Defendants also would not agree to eliminate the video lottery machine limit or even to permit a higher limit.

## FIRST CLAIM

29. The allegations of paragraphs 1-28 are realleged and incorporated by reference.

30. Under the Indian Commerce Clause, Article I, § 8, cl. 3 of the United States Constitution, and federal common law, states do not have the jurisdiction within Indian country to assess or are preempted from assessing sales taxes on sales by a tribe of tangible personal property to non-members of the Tribe or to assess use taxes attributable to the purchase, by non-members, of tangible personal property from a tribe when the value marketed to the non-members is generated in Indian country by activities in which the Tribe is involved

or has a significant interest and when the taxpayer is the recipient of tribal services. Such state tax assessments infringe on the rights of tribes to self-government and place an undue burden on Indian commerce.

31. Under the Indian Gaming Regulatory Act, 25 U.S.C. § 2710 (d) (3) (C) and (4), states do not have the right to assess taxes in connection with a tribal gaming activity other than those that have been agreed to, in a Compact with an Indian tribe, as directly related to and necessary for the licensing and regulation of such gaming activity and as necessary to defray the costs of regulating such activity.

32. Under the Act of February 22, 1889, c. 180, 25 Stat. 676, Article XXII of the Constitution of the State of South Dakota, the Act of August 15, 1953, c. 505, 67 Stat. 588, 589, 18 U.S.C. § 1162 and 28 U.S.C. § 1360, the Defendant State does not have the jurisdiction to impose or is preempted from imposing the sales and use taxes described in paragraph 29.

33. By imposing and attempting to collect its sales and use taxes with respect to tangible personal property sold by or purchased from the Plaintiff Tribe by non-members at the Royal River Casino and by conditioning the approval of a liquor license for the Royal River Casino on the Plaintiff Tribe collecting and remitting such taxes to the Defendant State, the Defendants have violated the Tribe's rights under the Indian Commerce Clause, Article I, § 8, cl. 3 of the United

11

States Constitution, to be free of undue burdens on Indian commerce, the Tribe's rights to self-government under the Treaty of April 29, 1868, 15 Stat. 635, and federal common law, and the Tribe's rights under the Indian Gaming Regulatory Act to be able to engage in gaming activities free from state taxation except as expressly authorized in such Act.

34. By imposing its sales and use taxes with respect to tangible personal property sold by or purchased from the Plaintiff Tribe by non-members at the Royal River Casino, the Defendants have violated the Act of February 22, 1889, c. 180, 25 Stat. 676, article XXII of the Constitution of the State of South Dakota, and the Act of August 15, 1953, c. 505, 67 Stat. 588, 589, 28 U.S.C. § 1360.

### SECOND AND ALTERNATIVE CLAIM

35. The allegations of paragraphs 1-34 are realleged and incorporated by reference.

36. Under the Indian Gaming Regulatory Act, 25 U.S.C. § 2710 (d) (3) (C), states do not have the right to license or regulate the sale of liquor, for on premises consumption, at a gaming operation wholly owned by an Indian tribe and conducted on Indian lands.

37. Under 18 U.S.C. § 1161, a tribe is not required to secure a state liquor license in circumstances where the state imposes conditions on such licensure that violate the tribe's rights under federal law or where the state has

12

determined that it does not have jurisdiction to issue such a license.

38. By threatening to interfere with the tribe's ability to sell liquor at the Casino, unless the Casino has as a state liquor license, Defendants are violating the rights of the Plaintiff Tribe under the Indian Gaming Regulatory Act to sell liquor at the Casino without a state liquor license.

39. Alternatively, even if it is ordinarily necessary, under 18 U.S.C. § 1161, for the Tribe to have a state liquor license in order to sell liquor at the Royal River Casino, by requiring the Tribe to collect and remit, to the Defendant State, sales and use taxes with respect to tangible personal property sold by the Plaintiff Tribe to non-members at the Royal River Casino as a condition for the approval of a liquor license, the Defendants have placed an unlawful condition precedent on the issuance of the liquor license and, therefore, the Tribe may sell liquor at the Royal River Casino pursuant only to a liquor ordinance approved by the Secretary of the Interior without violating 18 U.S.C. § 1161 or any other federal law.

40. Also, alternatively, even if it is ordinarily necessary, under 18 U.S.C. § 1161, for the Tribe to have a state liquor license in order to sell liquor at the Royal River Casino, the Defendant State, under the Act of February 22, 1889, c. 180, 25 Stat. 676, Article XXII of the Constitution of the State of South Dakota, and the Act of August 15, 1953,

13

c. 505, 67 Stat. 588, 589, 18 U.S.C. § 1162 and 28 U.S.C. § 1360 does not have jurisdiction to issue such a license or to regulate the sale of liquor on tribal trust land and, therefore, the Tribe may sell liquor at the Royal River Casino pursuant only to a liquor ordinance approved by the Secretary of the Interior without violating 18 U.S.C. § 1161 or any other federal law.

### THIRD CLAIM

41. The allegations of paragraphs 1-40 are realleged and incorporated by reference.

42. Under the Indian Commerce Clause, Article I, § 8, Clause 3 of the United States Constitution, the Indian trader statutes, 25 U.S.C. §§ 261-264, and federal common law, states do not have the jurisdiction within Indian country to assess sales and use taxes on the labor and materials used by prime and sub-contractors in realty improvements made by an Indian tribe, for either commercial or non-commercial purposes, on lands held in trust for the Tribe by the United States. Such state tax assessments infringe on the rights of tribes to self-government and place an undue burden on Indian commerce.

43. By indicating that it will continue to impose and seek to collect its sales and use taxes on the labor and materials used by prime and sub-contractors in realty improvements made by the Plaintiff Tribe, for either commercial or non-commercial purposes, on lands held in trust for the

14

Tribe by the United States, the Defendants have violated the Tribe's rights under the Indian Commerce Clause, Article I, § 8, cl. 3 of the United States Constitution, to be free of undue burdens on Indian commerce, the Tribe's rights under the Indian trader statutes, 25 U.S.C. §§ 261-264, the Tribe's rights to self-government under the Treaty of April 29, 1868, 15 Stat. 635, and federal common law, and, when such contractors are employed at the Royal River Casino, the Tribes rights under the Indian Gaming Regulatory Act to be able to engage in gaming-related activities free from state taxation except as expressly authorized in such Act.

### FOURTH CLAIM

44. The allegations of paragraphs 1-43 are realleged and incorporated by reference.

45. Under the Indian Commerce Clause, Article I, § 8, Clause 3 of the United States Constitution, the Indian trader statutes, 25 U.S.C. §§ 261-264, and federal common law, states do not have the jurisdiction within Indian country to assess a contractors' excise tax on the gross receipts of a prime contractor employed by an Indian tribe to make realty improvements, for either commercial or non-commercial purposes, on lands held in trust for the Tribe by the United States. Such state tax assessments infringe on the rights of tribes to self-government and place an undue burden on Indian commerce.

46. By publishing that it will continue to impose and

seek to collect its contractors' excise tax on the gross receipts of a prime contractor employed by an Indian tribe to make realty improvements, for either commercial or non-commercial purposes, on lands held in trust for the Tribe by the United States, the Defendants have violated the Tribe's rights under the Indian Commerce Clause, Article I, § 8, cl. 3 of the United States Constitution, to be free of undue burdens on Indian commerce, the Tribe's rights under the Indian trader statutes, 25 U.S.C. §§ 261-264, the Tribe's rights to self-government under the Treaty of April 29, 1868, 15 Stat. 635, and federal common law, and, when such contractors are employed at the Royal River Casino the Tribe's rights under the Indian Gaming Regulatory Act to be able to engage in gaming-related activities free from state taxation except as expressly authorized in such Act.

## FIFTH CLAIM

47. The allegations of paragraphs 1-46 are realleged and incorporated by reference.

48. Under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et. seq., the State of South Dakota may not limit (or refuse to negotiate beyond a certain limit) the number of slot machines or video lottery machines that the Plaintiff Tribe may operate under a Gaming Compact based on a purported State public policy that gaming should be limited or based on other reasons grounded on State laws, regulations, or policies.

49. By limiting or refusing to negotiate beyond a certain limit the number of slot machines and video lottery machines that the Plaintiff Tribe may operate under its Gaming Compacts based on a purported State public policy that gaming should be limited and based on other reasons grounded on State laws, regulations and policies, the Defendants have violated the rights of the Tribe under the Indian Gaming Regulatory Act.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court grant the following relief:

1. Issue a judgment declaring that:

(a) Defendants, their assigns, employees, or other agents do not possess the jurisdiction to impose or are preempted from imposing the sales and use taxes described in Plaintiff's First Claim and that they cannot condition the issuance of a liquor license for the Royal River Casino on the Tribe collecting and remitting such taxes to the Defendant State:

(b) The Tribe is not required to obtain a state liquor license in order to sell liquor at the Royal River Casino for on-premises consumption;

(c) Defendants, their assigns, employees, or other agents do not possess the jurisdiction to impose or are preempted from imposing the sales and use taxes described in Plaintiff's Third Claim;

(d) Defendants, their assigns, employees, or other

agents do not possess the jurisdiction to impose or are preempted from imposing the contractors' excise tax described in Plaintiff's Fourth Claim; and

(e) In a Gaming Compact entered into pursuant to the Indian Gaming Regulatory Act, Defendants, their assigns, employees, or other agents cannot limit or seek to limit the number of slot machines or video lottery machines that the Plaintiff Tribe may operate.

2. Order costs, attorneys' fees, and such other and further relief as the Court may deem just and proper.

Dated this 14th day of April, 1994.

Respectfully Submitted,

*[signature]*
ALBERT C. JONES
P.O. Box 283
Flandreau, SD 57028
Tel: (605) 997-3891
Attorney for Plaintiff